## KLEIN v. STEWART, ADMR.

*Landlord and tenant—Negligence—Death of tenant resulting
from fall on defective stairway—Verdict and judgment
not reversed where evidence conflicting, when—Verdict,
reduced by remittitur to $7500, not excessive—Question
for jury—Whether injuries received from fall proximate
cause of death—Landlord to exercise ordinary care to keep
stairway safe—Defect existed when landlord acquired
property and tenant assumed occupancy.*

1. Where there is a mere conflict in evidence, Court of
   Appeals may not reverse finding and judgment of lower
   court, except as to a matter of law, and the situation
   must be apparent from the face of the record that the
   jury was guilty of error of judgment to such an extent
   as to shock the senses.
2. In action against landlord for wrongful death caused by
   fall on stairs, Court of Appeals could not say as matter
   of law that $12,000 verdict, reduced by remittitur to
   $7,500, was excessive, where deceased was married woman,
   accustomed to doing her own housework.
3. Where, in action against landlord for wrongful death
   caused by tenant's fall on stairway, there was credible
   evidence to support the allegation that the injuries re-
   ceived were the proximate cause of death, whether such
   injuries actually did cause death was for the jury.
4. Where landlord leased a portion of a house to which access
   was had by stairway, it was his duty to exercise ordinary
   care to make such stairway safe and to keep it so, even
   though he was not responsible for its original defects.

(Decided April 18, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. W. H. McMorris*, for plaintiff in error.
*Mr. Wm. T. Redmond, Mr. J. De Kaiser*, and
*Mr. M. C. Harrison*, for defendant in error.

SULLIVAN, P. J.   This cause comes into this court on error from the court of common pleas of Cuyahoga county, Ohio, and it is sought to reverse a verdict and judgment of some $12,000 rendered in favor of the plaintiff below, Benjamin Stewart, administrator, against the defendant below, Jacob Klein, for wrongful death.   This cause was reversed May 24, 1926, in a per curiam opinion, and remanded for another trial, on the ground that the cause should have been submitted to the jury, there being in our judgment a scintilla of evidence to support the issues that the defendant was negligent and that this negligence was the proximate cause of decedent's injuries and death.   The case of *Davies* v. *Kelley*, 112 Ohio St., 122, 146 N. E., 888, was cited as authority for the judgment of the court, and reference made to Section 1006, General Code, which related to the duty of owners with respect to common stairways in apartment houses.   It was also stated in the opinion that if there was any liability devolving upon the landlord, it was because of a common-law liability, to wit, failure to exercise ordinary care under all the facts and circumstances in the case, and it was held that the common pleas court erred in directing a verdict. Thereupon, the cause being remanded, another trial was had, and a judgment for some $12,000 was rendered for the plaintiff, as above noted, and error is prosecuted to this court on the ground that the judgment is contrary to law; that the court erred in overruling the motion for judgment upon the special findings; that the judgment is against the manifest weight of the evidence; that the verdict is excessive; and that there was error in

overruling the motions for a directed verdict and other errors in respect to the evidence.

We have examined the record bearing upon the question as to whether the judgment is clearly and manifestly against the weight of the evidence, and we have come to the conclusion that that assignment of error is not well founded. This court, where there is a mere conflict in the evidence, has no authority to reverse the findings and judgments of the lower court except as to a matter of law, and the situation must be apparent from the face of the record that the jury was guilty of some error of judgment to such an extent that their judgment was shocking to the senses. Bearing upon this subject, we quote the following authorities:

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony." *Breese* v. *State,* 12 Ohio St., 146, 80 Am. Dec., 340.

"A mere difference of opinion of the court with the jury, will not justify setting aside the verdict." *Remington* v. *Harrington,* 8 Ohio, 507.

"When the evidence is conflicting, a verdict will not be set aside because the evidence against the verdict is strong." *Higgins* v. *Drucker,* 22 C. C., 112, 12 C. D., 220.

In the record of the instant case we find that the following interrogatories were propounded to the jury:

"(1) What cause or causes were responsible for the fall of Sarah Stewart, decedent, down the basement stairway?

"Answer. Defective construction.

"(2) Was the fall of decedent, Sarah Stewart, due directly to her tripping over a basket on the landing at the top of the basement stairway?

"Answer. No.

"(3) What was the proximate cause of the death of decedent, Sarah Stewart?

"Answer. Resulted from fall downstairs."

These answers were made by the twelve jurors, and counsel for plaintiff in error argues in the brief that the first answer is inconsistent with the verdict. We have examined this claim, and it is our judgment that with respect to the allegations of the petition and the proof the finding is not inconsistent with the judgment, but is in response thereto, and under the authorities we have come to the conclusion that as to this question the judgment is not contrary to law.

With respect to the other findings it is likewise our opinion that they respond substantially to the allegations of the petition and the evidence in the record, and therefore they are not inconsistent or repugnant to the general verdict.

In examining the record, we cannot come to the conclusion, under the rules of law, that the verdict was excessive, as it was reduced by remittitur to the sum of $7,500, and judgment entered therefor.

There is credible evidence in the record supporting the proposition that the injuries received were the proximate cause of the death, and where there is only a conflict in the evidence the question for the court to determine is whether there is credible evidence supporting the verdict, and we find that the record so shows. We cite the following to support our judgment in this respect:

Dr. Hain, the attending physician, testified as follows:

"Q. Are you able to tell us now what condition you found her to be in, what was wrong with her?

"A. Yes. Her shoulder was broken; the head of the humerus broken off, rotated; both bones of the forearm, and several ribs.

"Q. You speak about both bones of the forearm?

"A. Were broken. And several ribs on her right side were broken.

"Q. What treatment did you give to her at that time when you first saw her?

"A. Splints to the injured arm; mobilization of the chest with plaster; iodides to relieve the pain.

"Q. What do you mean by that, an opiate?

"A. Opiate, yes. * * *

"Q. How long did your treatment continue, would you say?

"A. Several months.

"Q. State what her condition was from the time of the injury, just trace it on, what was the next thing you observed about her in the course of a few days.

"A. She developed pneumonia on the right side, right lung. * * *

"Q. How long did she continue ill with pneumonia?

"A. Well, two weeks approximately before she had her crisis; and then she had trouble with her lung for a week—10 days—some such matter as that, following.

"Q. What further did you observe about her in the next weeks or months that you treated her?

"A.  She suffered a great deal of pain, restless, appetite impaired.

"Q.  What, if anything, did you observe as to her weight, as to increasing or decreasing or remaining about the same?

"A.  Decreased weight.

"Q.  What would you say her general physical condition was at the time of her death with reference to weight and strength, or as you yourself observed her?

"A.  Her general health was very much impaired; her weight was considerably less than it was when I saw her at the time that she injured her arm.  I should approximate it perhaps 50 to 60 pounds, some such matter as that.  Decidedly weaker."

As bearing upon the charge that the verdict is excessive, and in support of our judgment upon this feature of the case, we quote the testimony of Robert Stewart and Rebecca Bourquin as follows:

Robert Stewart testified:

"Q.  Now, before this accident, what did you notice about your mother's health and strength, was she active or not?

"A.  My mother was a strong, healthy woman.

"Q.  Who did the housework in the house there as you observed it from time to time?

"A.  Before the accident?

"Q.  Yes.

"A.  My mother."

Mrs. Rebecca Bourquin, a neighbor, testified:

"Q.  How long had you known her, would you say, Mrs. Bourquin?

"A.  About 18 months.

"Q. How often would you say you saw her before that?

"A. Every day, naturally. She lived right in the same house with me, you might say.

"Q. Mrs. Bourquin, tell the jury what you observed about Mrs. Stewart before the fall she had in September, as to her conduct with reference to housework, what she did.

"A. Why she did her own housework, all of her housework.

"Q. Who helped her, if anybody?

"A. Nobody helped her.

"Q. What did you observe about her walk, as to whether or not she walked, or did she have assistance?

"A. Oh, she was in wonderful health; she was a very strong woman, healthy woman.

"Q. Was she active all day?

"A. All the time; yes."

. We also quote the testimony of Benjamin Stewart, decedent's husband, who testified as follows:

"Q. Now, Mr. Stewart, before your wife had this fall, tell what she did around the house, as to her being active or inactive.

"A. Oh, she was real active.

"Q. Who did the housework in your home?

"A. She did all of it herself.

"Q. Who went to market?

"A. She went to the market herself.

"Q. How far would she have to walk to go there?

"A. Well, it is from Colgate down there, that is above, this side of Seventy Third, that is where we lived, and Seventy-Third down to Twenty-Fifth

street market, you know that is quite a ways, it is a mile.''

As to the charge of error in overruling the motion for a new trial, if we revert to the opinion of the court rendered May 24, 1926, upon the former hearing of this case, we are forced to come to the conclusion that the instant case was tried upon the theory set forth by the court in that opinion, and, in our judgment, the court committed no error in overruling the motion for a new trial. From an examination of the assignments of error as to the admission and rejection of evidence, we have come to the conclusion that there is no substantial error.

Counsel for plaintiff in error argues that inasmuch as the plaintiff in error was not the original owner of the apartment in question, and did not construct the stairway where the injury happened, and inasmuch as the tenant, the decedent, assumed occupancy of the premises with the condition of the stairway created or in existence, that under such circumstances there would be no negligence that would make him liable, inasmuch as the plaintiff in error, as landlord, had nothing to do with the creation of the defect or the condition of the stairway from a structural standpoint. In discussing this question, it is well to bear in mind *Davies* v. *Kelley, supra,* because that case holds that it is the duty of the landlord to exercise ordinary care to keep the stairway in a reasonably safe condition, as will be observed from the following language used by the court in that case:

''If the owner of a house leases a portion of it, to which access is had by ways of halls, stairways or other approaches, to be used by such tenant in common with the owner or tenants of the other

portions of the premises and retains the possession and control of such halls, stairways or other approaches, it is his duty to exercise ordinary care to keep the same in a reasonably safe condition.''

If it is the duty of the landlord to exercise ordinary care in keeping the stairway in a reasonably safe condition, it would certainly follow that it would be contrary to this principle of law to maintain a stairway so constructed that it was not reasonably safe for ingress and egress. Therefore this proposition of law, in our judgment, has no foundation under the authority thus quoted. The duty to keep safe presumes the obligation to make safe, and thus, when the stairway is made safe, it then naturally follows that it becomes the obligation of the landlord, under *Davies* v. *Kelley, supra,* to maintain and keep it safe.

Thus holding, it is our judgment that there is no prejudicial error warranting a reversal of the judgment, and the same is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.